**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STATE OF OKLAHOMA, ex rel. JOHN ) <br> DOAK, INSURANCE COMMISSIONER, ) <br> AS RECEIVE FOR PEGASUS INSURANCE ) <br> COMPANY, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ESTATE OF WILLIAM D. THORNELL, ) <br> DON THORNELL, CPA, INC., DIANNE ) <br> NALER, and DIANNE NALER, CPA, P.C., ) <br> ) <br> Defendants ) | NO.  CIV-12-0708-HE |

## ORDER

John Doak, the Insurance Commissioner for the State of Oklahoma, as Receiver for Pegasus Insurance Company, Inc. ("Pegasus"), sued the Estate of William D. Thornell, Don Thornell, CPA, Inc., Dianne Naler and Dianne Naler, CPA, P.C. in state court, alleging defendants provided negligent auditing services to Pegasus, which is now in liquidation. Defendants Dianne Naler and Dianne Naler, CPA, P.C. removed the case to this court. They have now filed a motion to dismiss for lack of in personam jurisdiction, which the court concludes should be denied.

## Background

The facts are straightforward. Pegasus is an Oklahoma corporation regulated by the Oklahoma Insurance Department ("OID"). Pegasus has its principal place of business in Alexander City, Alabama, which is where Wayne Stark, Pegasus' sole owner, resides.

William Thornell, a certified public account ("CPA"), who practiced in Alexander City, performed Pegasus's financial audits prior to 2009. After he died in March 2010, Mr. Stark asked Dianne Naler to perform Pegasus' annual audit for the year ending December 31, 2009. She performed the audit through her accounting firm, Dianne Naler, CPA, PC.[1] In her engagement letter with Pegasus, Naler described, as the "Audit Objective," "the expression of an opinion as to whether your statutory-basis financial statements are fairly presented, in all material respects, in conformity with accounting principles prescribed or permitted by the Oklahoma Insurance Department . . . ." Plaintiff's response, Exhibit 1. The Engagement Acceptance Form described the intended use of the financial statements as "Regulatory for NAIC & Oklahoma, etc." *Id.*, Exhibit 2. Naler informed Pegasus' Board of Directors in a letter dated May 29, 2010, that she had completed her audit and issued her report. She advised the Board that it was her understanding that

> the Company intends to file its audited statutory-basis financial statements with my report thereon with the Oklahoma Insurance Department and other state insurance departments in states in which the Company is licensed, and that the insurance commissioners of those states will rely on that information in monitoring and regulating the statutory financial condition of the Company.

Plaintiff's response, Exhibit 3. Naler also informed the Board that she would retain her workpapers until the Oklahoma Insurance Department filed a Report of Examination for 2009, would make them available for review "by the Oklahoma Department of Insurance at the officers of the insurer, at [her] office, at the Insurance Department or at any other

---

[1] *For purposes of the motion, the court will treat Ms. Naler and her company as one entity and will refer to them as "Naler" or defendants.*

2

reasonable place designated by the Insurance Commissioner," and would allow copies to be made and retained by the Oklahoma Department of Insurance. *Id.* In the Notes to the audit report, Naler identified Pegasus as "an Oklahoma domiciled corporation ... licensed to write property and liability insurance in Oklahoma." *Id.,* Exhibit 4. On an information form she completed in conjunction with the audit, Naler described Pegasus's customer base as "most in Florida and Oklahoma." *Id.,* Exhibit 7.

In June 2012, a Consent Order of Rehabilitation and Permanent Injunction was filed in Oklahoma state court based upon the finding that Pegasus was insolvent. In her petition and application for appointment as Pegasus's Receiver for Rehabilitation,[2] the Insurance Commissioner stated she had determined that Pegasus was financially impaired and/or insolvent. She asserted she reached that conclusion based on Wayne Stark's transfer of Pegasus' assets "at the end of financial quarters to affiliated Professional Employer Organizations to improve the financial statements of these subsidiaries." Defendants' Exhibit B, Insurance Commissioner's Petition, ¶ 10. She cited as examples transfers that were made on January 4, 2010, in an amount in excess of $6 million, and on April 1, 2010, in an amount in excess of $5 million. The Commissioner stated that, despite her demands "that Mr. Stark infuse surplus into Pegasus and/or the affiliate Professional Employer Organizations to make them solvent," Mr. Stark had been unable to do so. *Id.* at ¶ 10. The following August the Oklahoma Insurance Commission determined that attempts to

---

[2]At that time the Insurance Commissioner was Kim Holland.

rehabilitate Pegasus would be futile and, on August 12, 2010, the state court entered an Order of Liquidation. The Insurance Commissioner as Receiver is charged with marshaling Pegasus' assets and resolving its debts.

Plaintiff claims defendants were negligent and, as a result of their "audit failures, Pegasus' SAP-basis financial statements were inaccurate and failed to disclose Pegasus' true financial condition." Petition, ¶ 27.

## Analysis

The standard for determining the existence of in personam jurisdiction is well established. To obtain personal jurisdiction over a nonresident defendant in a diversity action, plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the Due Process clause of the Fourteenth Amendment. Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000). As Oklahoma permits the exercise of jurisdiction to the full extent allowed by the Constitution, the question becomes whether maintenance of the suit satisfies due process requirements. *Id.* Due process is not offended by the exercise of jurisdiction over a nonresident defendant so long as that defendant has "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Trierweiler v. Croxton and Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

A court may exercise general or specific jurisdiction over a company. OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d 1086, 1090-91 (10th Cir. 2010). Jurisdiction is

specific if the suit arises out of or is related to the defendant's contacts with the forum state. *Id.* Jurisdiction is general if it does not arise directly from a defendant's forum-related activities, but is based on the defendant's "general business contacts with the forum state." *Id.* at 1091. Plaintiff does not assert the court has general jurisdiction over Naler.

Whether a nonresident individual or company has the necessary minimum contacts with the forum state is decided on the particular facts of each case and plaintiff has the burden of establishing the jurisdictional facts. Benton v. Cameco Corp., 375 F.3d 1070 (10th Cir. 2004). When the jurisdictional question is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing; all factual disputes are resolved in the plaintiff's favor. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008).

The question is whether Naler subjected herself to the jurisdiction of this court[3] by preparing an audit report for Pegasus, which she knew was to be filed with the OID and would be relied on by the Oklahoma Insurance "to monitor and regulate the financial condition of Pegasus." Petition, ¶ 10. The court must decide whether Naler "'purposefully avail[ed] [herself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" Trierweiler v. Croxton& Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996) (quoting Hanson v. Denckla, 357 U.S. 235, 253

---

[3]In a removed case, the inquiry is whether the state court from which the case was removed had the necessary jurisdictional contacts. 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman, Federal Practice and Procedure § 3738 at 712-13 (4th ed.2009).

(1958)).

"'Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff ... [and generally] requires ... affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state.'"[4] *Id.* at 1535 (quoting Rambo v. American Southern Ins. Co.,839 F.2d 1415, 1420 (10th Cir.1988)). "[T]he mere foreseeability of consequences within the forum state, without more, is insufficient as a basis for jurisdiction." *Id.*

Defendants argue that their only contact with the forum "arises from Pegasus' own unilateral acts associated with its engagement of her to perform an audit of its financial statements for the year ending December 31, 2009." Defendants' reply, pp. 1-2. A somewhat similar argument, but in difference circumstances, was successful in Trierweiler. The plaintiff in that case loaned money to the defendant, relying in part on an audit of Dublin, a third party guarantor. Wenner, Silvestain & Company ("Wenner"), an accounting firm located in Colorado, had conducted the audit. When the defendant defaulted and Dublin

---

[4]*In Dudnikov, the Tenth Circuit stated that "[i]n the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." Dudnikov, 514 F.3d at 1071. In Dudnikov the court applied the purposeful direction or "effects test" of Calder v. Jones, 465 U.S. 783 (1984). However, it noted that it did not "imagine that Calder necessarily describes the only way to satisfy the purposeful direction test." Id. Although Trierweiler involved negligent misrepresentation claims, the court applied a "purposeful availment analysis." Trierweiler, 90 F.3d at 1535. As Trierweiler more closely parallels the facts present here, the court has applied its analysis and terminology, rather than the Calder test. That allows this court also to avoid entering the "thicket" and having to decide whether Calder requires, in purposeful direction cases, "some form of 'wrongful' intentional conduct." Dudnikov, 514 F.3d at 1073. This case, which involves allegations of professional negligence arising out of a contract for services, is a hybrid of sorts.*

failed to honor its guarantee, the plaintiff asserted negligent misrepresentation and other claims against multiple parties, including Wenner. To determine whether Colorado or Michigan's choice of law rules applied, the Tenth Circuit had to decide if Michigan had personal jurisdiction over Wenner, which had no office, employees or agents in that state.[5]

Trierweiler asserted that Dublin's general counsel sent the audit to Cooper, his attorney in Michigan, who had relied on it in advising him to execute the loan agreement. He also argued that Wenner had consented to have the audit filed with the Securities Exchange Commission as part of Dublin's registration statement and therefore knew that the audit would be relied on throughout the United States. The Tenth Circuit rejected Trierweiler's arguments that Michigan had specific jurisdiction over Wenner, concluding the firm had not "acted affirmatively to allow or promote business in Michigan." *Id.* It noted that there was no "allegation that Wenner knew its audit was to be forwarded to Michigan." *Id.* While it might have foreseen reliance on the audit throughout the country based on its inclusion in Dublin's filing documents, the appellate court concluded that, "without more, [was] insufficient as a basis for jurisdiction." *Id.*

In Trierweiler the Tenth Circuit also rejected the plaintiff's argument that a Denver law firm retained by Dublin to prepare an opinion letter concerning the perfection of bonds securing its guaranty and Kaplan, the associate who prepared the letter, were subject to suit

---

[5]*Because the action had been transferred from Michigan to Colorado, the court had to decide whether Michigan had personal jurisdiction over the defendants in order to determine which state's choice of law rules applied.*

7

in Michigan. The fact that Kaplan and his firm understood that the letter, which they sent to Dublin in Colorado, would then be sent to plaintiff's counsel, Cooper, in Michigan, was not enough to subject the firm and Kaplan to suit in Michigan. The Tenth Circuit reiterated that "the mere foreseeability of causing injury in another state "is not a 'sufficient benchmark' for exercising personal jurisdiction." *Id.* at 1534 (quoting Burger King Corp. v. Rudzewicz., 471 U.S. 462, 474 (1985)). Foreseeability was critical to the court's due process analysis, but it was whether, in light of the defendant's conduct and connection with the forum State, "'he should reasonably anticipate being haled into court there.'" *Id.* (quoting Burger King, 471 U.S. at 474. Noting that the purposeful availment requirement ensures that a defendant will not be forced to litigate in a jurisdiction as the result of another party's unilateral acts, the Tenth Circuit concluded Kaplan and his firm had not purposely availed themselves "'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting Burger King, 471 U.S. at 475).

This case is different from the usual "minimum contacts" inquiry. Defendants have none of the usual contacts that provide a basis for in personam jurisdiction. However, recognizing that plaintiff's burden of establishing personal jurisdiction over the defendants "in the preliminary stages of litigation ... is light," Intercon, 205 F.3d at 1247 (internal quotations omitted), the court finds defendant Naler's acts constitute the necessary purposeful contacts with Oklahoma.

Naler specifically undertook to express an opinion as to whether the company's financial statements complied with the accounting requirements of the Oklahoma Insurance

Department.[6]  She knew the audit was intended to be used by the State of Oklahoma for regulatory purposes and specifically agreed to make her work papers available for review by the Oklahoma Department of Insurance.  She knew Pegasus intended to file her report and the  audited financial statements with the Oklahoma Insurance Department. She also knew that the Insurance Commissioner of the State of Oklahoma would "rely on that information in monitoring and regulating the statutory financial condition of the Company."  Plaintiff's response, Exhibit 3.  While Naler was aware that other insurance commissioners, in states where Pegasus was licensed, would also be furnished and depend on the audit she performed, Naler knew Pegasus was an Oklahoma domiciled corporation and that its customer base was in either Oklahoma or Florida.   Naler knew that the Oklahoma Insurance Commissioner had a special interest in, and obligation with respect to, Pegasus' financial stability.

Defendants argue that they "merely facilitated the business Pegasus was conducting in Alabama – the business of writing insurance." Defendants' motion, p. 13.  While the court agrees defendants were facilitating Pegasus' business, they ignore the fact that the principal purpose of the audit was to ensure Pegasus' compliance with the requirements of the OID and to protect its policyholders.  Defendants conducted a regulatory audit, not a regular business audit.

Combined, these facts distinguish this case from <u>Trierweiler</u> and lead the court to

---

[6]*Defendants argue that the Commissioner's status as Receiver somehow impacts this aspect of the analysis.  It does not.*

conclude that Naler's "conduct and connection with the forum State are such that [s]he should reasonably anticipate being haled into court [here]." Trierweiler, 90 F.3d at 1534 (quoting Burger King Corp., 471 U.S. at 474). Plaintiff's claim arises out of Naler's own affirmative actions, which created a connection with the State of Oklahoma, rather than merely those of Pegasus. The fact that she provided the audit to Pegasus and that Pegasus then submitted it to the OID is not determinative, in light of her knowledge of the intended use of the audit and its preparation specifically for the OID. She is not being required "to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." Dudnikov, 514 F.3d at 1071 (quoting Burger King, 471 U.S. 475). *See* Leedom Fin. Servs., LLC v. Geer & Assocs., P.C., 2010 WL 1852395 (M.D.Fl. 2010). An auditor who performs a regulatory audit for an Oklahoma corporation, which audit is specifically directed at compliance with Oklahoma's regulatory requirements, should reasonably anticipate the possibility of being "haled into court" there.[7]

Having determined that jurisdiction is proper under the laws of the forum state does not end the inquiry. The court must make the further determination of whether subjecting Naler to suit in Oklahoma would be "reasonable." In Dudnikov, the Tenth Circuit discussed the factors that should be considered when determining "whether the exercise of personal jurisdiction [over the defendant] would 'offend traditional notions of fair play and substantial

---

[7]*Unlike* Trierweiler, *this is not a situation where the audit was prepared to satisfy a national regulatory request with only the possibility that someone in a particular state might rely on it. Oklahoma regulatory compliance was the principal focus of defendants' undertaking.*

justice.'" Dudnikov, 514 F.3d at 1080 (quoting Int'l Shoe, 326 U.S. at 316). The court stated that

> [i]n making such an inquiry courts traditionally considered factors such as these: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

*Id*. (quoting OMI, 149 F.3d at 1095).

Although clearly there would be some burden on Naler if she is required to litigate in Oklahoma, there is no evidence in the record that it would be significant.[8] Naler also has "not indicated that [her] defense of this case would be hindered by the territorial limits on the [Oklahoma] district court's power to subpoena relevant witnesses, or indeed hampered in any other significant way." *Id.* at 1081; *see* OMI, 149 F.3d . at 1096 ("While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction."). Therefore, while the first factor does not weigh heavily in Naler's favor, it does militate against the exercise of jurisdiction.

As for the forum state's interest in adjudicating the dispute, the State of Oklahoma has a significant interest in insuring the solvency of insurance companies it regulates and which insure its citizens. This factor favors the plaintiff.

---

[8]*All defendants state in this regard is that "[i]n order to litigate the case in Oklahoma, Ms. Naler and DNPC will have to travel outside their home state." Defendants' motion, p. 17.*

11

The third factor at best barely tips in plaintiff's favor.  While it would be somewhat inconvenient for the Receiver to seek relief in Alabama, nothing before the court indicates he could not receive effective relief there.  *Cf.* OMI, 149 F.3d at 1097 ("This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in a another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit.").

The fourth factor in the reasonableness inquiry – the interstate judicial systems's interest in obtaining efficient resolution – requires the court to "examine whether the forum state is the most efficient place to litigate the dispute.  Key to this inquiry are "the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." OMI, 149 F.3d at 1097 (internal citations omitted).  The witnesses in the dispute are expected to be located principally in Oklahoma and Alabama, though that is by no means clear;[9]  the alleged negligence occurred in Alabama, whose law will probably apply; and there is no apparent problem of piecemeal litigation.  This factor tilts slightly in defendants' favor.

The remaining consideration – the shared interest of the several states in furthering fundamental social policies – "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations."

---

[9]*Defendants state that most witnesses are largely located in Alabama, but specifically identify only two who can be found there – herself and Stark.  Moreover, to the extent that proof of plaintiff's claim would involve reference to the underlying financial transaction or to the consequences of defendants' alleged negligence, the witnesses may be elsewhere.*

OMI, 149 F.3d at 1097.  It is not clear that this factor applies in any substantial way here. However, the regulation of insurance companies in the United States is principally a function of the states and each state has an interest in promoting the effective regulation of companies domiciled in it.

Balancing these factors and considering the strength of the second factor, the court concludes that exercising personal jurisdiction over the defendants would not "'offend traditional notions of fair play and substantial justice.'" Dudnikov, 514 F.3d at 1070 (quoting Int'l Shoe Co., 326 U.S. at 316).  Subjecting Naler to the court's jurisdiction would be consonant with the requirements of due process.

Accordingly defendants' motion to dismiss [Doc. #6] is **DENIED**.

**IT IS SO ORDERED**.

Dated this 5th day of October, 2012.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE