IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. STATE OF OKLAHOMA, ex rel. JOHN DOAK, INSURANCE COMMISSIONER, AS RECEIVER FOR PEGASUS INSURANCE COMPANY, INC., | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. CIV-12-708-HE |
| v. | ) ) | *(District Court, Oklahoma County, Oklahoma, Case No. CJ-2012-3214)* |
| 1. ESTATE OF WILLIAM D. THORNELL, 2. DON THORNELL, CPA, INC., 3. DIANNE NALER, and 4. DIANNE NALER, CPA, P.C. | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS DIANNE NALER'S AND DIANNE NALER CPA, P.C.'S MOTION TO DISMISS PLAINTIFF'S CLAIMS OR FOR ALTERNATIVE RELIEF**

Defendants Dianne Naler and Dianne Naler CPA, P.C., move this Court for an Order dismissing Plaintiff's claims set forth in its First Amended Complaint (Doc. #26) or for alternative relief. In support of this Application, Defendants would show the Court as follows:

**MOTION TO DISMISS PLAINTIFF'S CLAIMS**

1.  On April 12, 2013, Plaintiff filed its Amended Complaint (Doc. #29) asserting that Defendants were liable for damages to Pegasus by (a) negligently performing Pegasus' 2009 annual audit, which the Oklahoma Insurance Department (the "Department") relied upon to the detriment of Pegasus, and (b) failing to disclose and timely report to the Department that Pegasus had transferred its assets to several of its affiliated entities during 2009, which Plaintiff claims Defendants had a duty to disclose to the Department independent of the June 1, 2010 deadline for filing Pegasus' audit. *See*, P.'s Am. Compl. (Doc. #29) at 7-8, ¶¶34-39, 9-10, ¶¶44-47.

2. On October 2, 2013, this Court held a hearing on the Department's Motion to Quash Defendants' Subpoena. At the hearing, Plaintiff's counsel explained Plaintiff's theories of liability against Defendants that it claims to have pled in its Amended Complaint (Doc. #29). *See*, Hr'g Tr. (Oct. 2, 2013) at 5-10 attached as Exhibit "1."

3. Plaintiff's counsel acknowledged Plaintiff's original theories of liability involved Defendants' negligent audit of Pegasus' 2009 financial statements that failed to disclose Pegasus' transfers of its surplus capital to its affiliated entities, which the Department relied upon to determine Pegasus' financial condition causing it to delay taking action against Pegasus, thereby contributing to Pegasus' continued wasting of its assets. *See*, Ex. 1, Hr'g Tr. at 6:6-14; *and see*, P.'s Am. Compl. (Doc. #29) at 7-8, ¶¶34-39.

4. Plaintiff's counsel also elaborated upon Plaintiff's allegations that Defendants breached a duty to disclose to the Department that Pegasus had previously transferred its assets in 2009 or January of 2010. Plaintiff asserts Defendants either knew or should have known that Pegasus had made these earlier transfers before completing Pegasus' audit and had a duty to disclosed such activities before Pegasus' audit was due to be filed with the Department on June 1, 2010. Plaintiff claims Defendants' breach of their duty to disclose these previous transfers prevented the Department from acting to stop Pegasus' transfer of its assets on April 1, 2010, which contributed to its continued wasting of assets deepening its insolvency. *See*, Ex. 1, Hr'g Tr. at 6:19-15, 7-8; *and see*, P.'s Am. Compl. (Doc. #29) at 7-8, ¶¶34-39, 9-10, ¶¶44-47.

5. At the October 2, 2013 hearing, Plaintiff's counsel also described a new theory of liability against Defendants as involving their negligent breach of a duty that Defendants owed Pegasus, independent of any auditing duties. He contended that Defendants failed to disclose to Pegasus' officers and directors that Pegasus had previously transferred its assets in 2009 or

2

January of 2010. Plaintiff's counsel averred that Defendants' duty to Pegasus' officers and directors arose based upon its contractual duty to perform Pegasus' audit. He also asserted that Defendants either knew or should have known that Pegasus had previously made these earlier transfers prior to or shortly after accepting their engagement to perform the 2009 audit on March 20, 2010. Plaintiff's counsel claimed that Defendants' breach of their duty to disclose these previous transfers prevented Pegasus' officers or directors from acting to stop Pegasus' transfer of its assets on April 1, 2010, which contributed to its continued wasting of assets deepening its insolvency. *See*, Ex. 1, Hr'g Tr. at 9:10-25, 10:1-8.

6. However, Plaintiff's alternate theory of liability differs significantly from Plaintiff's allegations as set forth in its Amended Complaint asserting Defendants failed to timely report Pegasus' earlier transfers to the ***Department prior to June 1, 2010***. *See*, P.'s Am. Compl. (Doc. #29) at 9-10, ¶¶44-47.

7. As described by Plaintiff's counsel at the hearing, Plaintiff now asserts a completely new theory of liability that Defendants breached a contractual duty to disclose the previous transfers to ***Pegasus' officers and directors prior to April 1, 2010***. *See*, Ex. 1, Hr'g Tr. at 9:10-25, 10:1-8.

8. After hearing oral arguments, this Court entered an order on October 3, 2013 denying the Department's Motion to Quash requiring the Department to produce the information responsive to Defendants' subpoena or the Court would not allow Plaintiff to pursue its initial theories that the Defendant's alleged negligent acts or omissions prevented the Department from taking action against Pegasus. *See*, Order (Doc. #56).

9. However, the Court ruled that Plaintiff would be allowed to pursue its new theory that Defendants breached their duty to disclose Pegasus' transfers to its officers or directors prior

3

to April 1, 2010 after they had been engaged to perform the audit on March 20, 2010. *See id.*

10. On October 15, 2013, the Department filed a Notice with this Court summarizing Plaintiff's decision to not pursue its initial theories and the Department's decision to not produce its records responsive to Defendants' subpoena. *See*, Department's Notice to Court (Doc. #56).

11. On October 18, 2013, Defendants filed their Response to the Department's Notice to the Court clarifying that Defendants did not agree that the Department's records responsive to their subpoena were no longer at issue since Plaintiff has not dismissed any of its claims. *See*, Defs.' Resp. to Department's Notice to Court (Doc. #58).

12. If Plaintiff continued to pursue his claim that Defendants failed to disclose Pegasus' transactions to the Department before their audit was due on June 1, 2010, the Department's records responsive to Defendants' subpoena would still be "at issue" because the issue of whether the Department knew or should have know of Pegasus' transfers before April 1, 2010 is relevant to their defense of that claim.

13. To date, Plaintiff has not dismissed any of his causes of action, sought leave to amend his complaint, or taken any other action with regard to expressly representing to this Court and Defendants which claims he would or would not pursue and the extent to which his decision affects his existing causes of action, theories of liability, or alleged damages.

14. Plaintiff's new theory of liability that Defendants were negligent by breaching a contractual duty owed to Pegasus' officers and directors to disclose its previous transfers of its assets prior to April 1, 2010 is a completely new theory of liability, which is not encompassed within any of the pertinent pleadings in this action. *See*, Ex. 1, Hr'g Tr. at 9:10-25, 10:1-8; Defs. Notice of Removal (Doc. #01) at Ex. 2, P.'s Pet. (Doc. #1-2); P.'s Am. Compl. (Doc. #26); Joint Status Report and Discovery Plan (Doc. #24); *and*, Defs.' Br. in Support of their Mot. to

Compel. (Doc. #40) at Ex. 6, P.'s Resp. to Defendants Discovery Requests (Doc. #40-6).

15. Defendants were surprised by Plaintiff's new theory of liability, which has not been formally pled as a basis of Pegasus' damages and is only supported by the representations that Plaintiff's counsel verbally made at a hearing on the Department's Motion to Quash. *See id.*

16. To date, the Parties have not conducted any discovery related to Plaintiff's new theory of liability because it was unknown to Defendants until announced by Plaintiff's counsel at the hearing on October 2, 2013.

17. Plaintiff has since conceded that he will not pursue any of his claims involving allegations that the Department relied upon Defendants' performance of Pegasus' audit so that the Department does not need to produce its records responsive to Defendants' subpoena.

18. As this Court indicated in its Order overruling the Department's Motion to Quash, Plaintiff should be precluded from pursuing any of his claims set forth in his Amended Complaint all of which place the Department's records responsive to Defendants' subpoena at issue in this litigation.

**WHEREFORE**, Defendants move this Court for an Order dismissing Plaintiff's action since the Department refuses to produce its records responsive to Defendants' subpoena and Plaintiff has decided not to pursue his claims that placed the Department's records at issue.

## MOTION FOR ALTERNATIVE RELIEF

19. If this Court does not dismiss Plaintiff's action, then Defendants, in the alternative, request that this Court enter an Order that either (a) requires Plaintiff to file an amended complaint setting forth his new theory of liability and allegations against the Defendants, (b) requires the Parties to appear at a status conference to discuss Plaintiff's precluded, remaining and new claims, and discovery on any remaining or new claims, or (c) extends all remaining deadlines by, at a minimum, three (3) months.

20. On August 2, 2013, Defendants filed a Motion to Extend All Remaining Deadlines in the Court's Scheduling Order. *See*, Application for Extension of Remaining Deadlines (Doc. #44).

21. On August 8, 2013, this Court entered a Revised Scheduling Order (Doc. #46).

22. On October 2, 2013, the Parties and the Department appeared at a hearing on the Department's Motion to Quash the Defendants' subpoena where Plaintiff's counsel verbally announced Plaintiff's new alternate theory of liability against Defendants for failure to disclose Pegasus' transfers of its assets to its officers and directors. *See*, Ex. 1, Hr'g Tr. at 5-10.

23. As Plaintiff's counsel acknowledged at the Hearing, this new theory of liability both exceeds and expands the scope of discovery that has been, up to this point, the focus of the Parties' ongoing discovery efforts. *See*, Ex. 1, Hr'g Tr. at 6:6-18; 8:22-25; 9:14-25; 10:1-6.

24. First, Plaintiff's new theory necessarily implicates additional non-parties, namely Pegasus' officers and directors and, perhaps, other employees as well, who have not been the subject of the Parties' ongoing discovery efforts. Defendants are entitled to discovery of what Pegasus' officers and directors knew or should have known and when they knew or should have known it. Defendants are also entitled to discover whether Pegasus' officers and directors made

all appropriate and diligent efforts to fulfill their responsibilities rather than turning a blind eye to Mr. Stark's illicit activities and whether other employees of Pegasus, who were not officers or directors, knew of Mr. Stark's activities.

25. Second, this new theory also expands the time period applicable to the information discoverable. Pegasus first began making these types of transfers to its affiliates in 2007 or 2008. So the time frame is not limited to just the time period that Defendants audited in 2009, but also encompasses time periods outside of Defendant's audit period when Pegasus first started making these types of transfers to its affiliates.

26. Third, it also implicates Pegasus as a corporate entity as Defendants should be allowed an opportunity to discover information and materials related to Pegasus' corporate operations such as how it was structured, what duties its officers and directors assumed, how its officers and directors were selected, whether its officers and directors exercised any level of control at any point in time, whether decisions reflecting the officers and directors level of control are documented in its corporate minutes, and so on.

27. Fourth, Plaintiff's new theory also implicates Pegasus' business dealings and relationships with its affiliated entities, which are also non-parties, as Defendants should be entitled to discover whether Pegasus and its affiliated entities shared certain officers and directors, and whether the officers and directors of the affiliated entities knew or should have known of the transfers, when they knew or should have known of the transfers, and whether they should have disclosed such transfers to Pegasus' officers and directors, and so on.

28. The Court's Revise Scheduling Order (Doc. #46) required Plaintiff to file his List of Expert Witnesses in Chief and exchange his expert's report on October 15, 2013.

29. On October 15, 2013, Plaintiff filed its List of Expert Witnesses in Chief

7

identifying Edward W. Buttner IV as his sole expert. *See*, P.'s Final List of Expert Witnesses in Chief (Doc. #57). Plaintiff exchanged Mr. Buttner's Report with Defendants on the same day.

30. Plaintiff knew or should have known before October 15, 2013 that his case against Defendants would necessarily be established through his expert's testimony. Plaintiff's claims are professional negligence claims, and, therefore, under Oklahoma law expert opinion is necessarily required in order to establish a *prima facie* case of negligence. *Boxberger v. Martin*, 1976 OK 78, 552 P.2d 370, 373; *and see*, *Strubhart v. Perry Mem'l Hosp. Trust Auth.,* 1995 OK 10, 903 P.2d 263, 274, citing *Johnson v. Misericordia Community Hospital,* 99 Wis.2d 708, 301 N.W.2d 156, 172 (1981) ("Expert testimony is required where the fact in issue is not within the realm of ordinary experience of mankind").

31. Mr. Buttner authored an 81 page report that primarily addresses his opinions regarding Defendants' alleged failure to disclose to Pegasus' officers and directors the transfers of its assets in 2009 and January of 2010 which prevented them from acting to stop Pegasus' April 1, 2010 transfers. It is somewhat likely that Mr. Buttner spent some considerable amount of time prior to October 15, 2013 preparing his 81 page report.

32. Defendants were not aware of Plaintiff's new theory of liability until it was announced at the hearing on October 2, 2013. However, Mr. Buttner was able to produce his expert report 13 days later that primarily addresses his opinions on this new theory of liability.

33. The Court's Revised Scheduling Order requires Defendants to file their List of Expert Witnesses and exchange their expert's report next Friday, November 1, 2013.

34. It is unfair to Defendants to expect their expert to have time to formulate his opinions on this new theory of liability and complete his expert report by next Friday.

35. It is extremely unfair and prejudicial to Defendants for their expert to be required

to offer an opinion with regard to a new theory of liability that has never been formally pled and that the Parties' have yet to conduct any discovery upon.

36.　On October 22, 2013, Defendants' counsel conferred with Plaintiff's counsel regarding the requested extension of all remaining deadlines, and Plaintiff objects to any requested extension.

**WHEREFORE**, Defendants Dianne Naler and Dianne Naler CPA, P.C., in the event that this Court denies their Motion to Dismiss Plaintiff's action, alternatively request an Order from this Court that either (a) requires Plaintiff to file an amended complaint setting forth his new theory of liability and allegations against the Defendants, (b) requires the Parties to appear at a status conference to discuss Plaintiff's new theory of liability, his precluded, remaining and new claims, and discovery on any remaining or new claims, or (c) extends all remaining deadlines in the Court's Revised Scheduling Order by, at a minimum, three (3) months.

Respectfully submitted,

PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.

/s/ Seth D. Coldiron
Stephen L. Olson　　(OBA No. 6777)
Seth D. Coldiron　　(OBA No. 20041)
P.O. Box 26350
Oklahoma City, OK  73126
Telephone:　405/235-1611
Facsimile:　405/235-2904
solson@piercecouch.com
scoldiron@piercecouch.com

*Attorneys for Defendants,
Dianne Naler and Dianne Naler, CPA, PC*

9

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was served upon counsel of record as listed below, on this the 21st day of October, 2013.

| | |
|---|---|
| John M. O'Connor<br>William W. O'Connor<br>Jon M. Payne,<br>Jerrick L. Irby,<br>Lindy H. Collins<br>NEWTON, O'CONNOR, TURNER & KETCHUM, P.C.<br>15 West Sixth Street, Suite 2700<br>Tulsa, OK  74119 | Via CM/ECF Electronic Service |

*Attorneys for Plaintiff,*
*State of Okla. ex. rel. John Doak,*
*Ins. Comm'r, as Receiver for*
*Pegasus Ins. Co., Inc.*

                                                       /s/ Seth D. Coldiron
                                                       Seth D. Coldiron